J-S71044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PATRICK SCOTT MONGEAU | |
| Appellant | No. 3513 EDA 2015 |

Appeal from the Judgment of Sentence April 20, 2015
in the Court of Common Pleas of Bucks County Criminal Division
at No(s): CP-09-CR-0006068-2014

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED OCTOBER 19, 201**

Appellant, Patrick Scott Mongeau, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas.[1]  Appellant challenges the sufficiency of the evidence and the discretionary aspects of his sentence.  We affirm.

We adopt the facts as set forth by the trial court's opinion.  **See** Trial Ct. Op., 4/8/16, at 2-5.  Following a jury trial, Appellant was convicted of

---

[*] Former Justice specially assigned to the Superior Court.

[1] On December 21, 2015, this Court issued a rule to show cause as to why this appeal should not be quashed as untimely filed based upon the Court of Common Pleas of Bucks County Docket, which indicated that post-sentence motions were untimely filed on August 10, 2015.  The docket in the certified record on appeal indicates that the sentence was imposed on April 20, 2015, and post sentence motions were filed on April 30, 2015.  Therefore, the post sentence motion was timely filed.  **See** Pa.R.Crim.P. 720(A)(1).

arson endangering inhabited property,[2] reckless burning endangering personal property,[3] criminal mischief,[4] stalking,[5] simple assault,[6] harassment,[7] and recklessly endangering another person.[8] He was sentenced to consecutive terms of five to ten years' imprisonment for arson, three-and-a-half to seven years for reckless burning, two-and-a-half to five years for stalking,[9] one to two years for simple assault, and one to two years each for recklessly endangering another person.

---

[2] 18 Pa.C.S. § 3301(c)(2).

[3] 18 Pa.C.S. § 3301(d)(2).

[4] 18 Pa.C.S. § 3304(a)(1).

[5] 18 Pa.C.S. § 2709.1(a)(1).

[6] 18 Pa.C.S. § 2701(a)(1).

[7] 18 Pa.C.S. § 2709(a)(1).

[8] 18 Pa.C.S. § 2705. Appellant was charged with four counts of reckless endangerment.

[9] We note the trial court opinion indicates that Appellant was sentenced to "two-and-a-half to seven years for the crime of Stalking." Trial Ct. Op. at 1. However, Appellant was sentenced to two-and-a-half to five years for stalking. N.T. Sentencing Hr'g, 4/20/15, at 36. The trial court concludes in its opinion that Appellant's aggregate sentence was sixteen to thirty-two years' imprisonment, which reflects a maximum five years' imprisonment for stalking. Trial Ct. Op. at 1. Therefore, when the case returns to the trial court, the court is ordered to correct the record to reflect a two-and-one half to five year sentence for stalking. *Cf. Commonwealth v. Holmes*, 933 A.2d 57, 66 (Pa. 2007) (holding courts have inherent power to correct patent errors in sentencing order when case is not pending on appeal).

On April 30, 2015, Appellant filed a post-sentence motion for reconsideration of his sentence and for a new trial. On July 14, 2015, the trial court denied the motion to reconsider Appellant's sentence. On October 26, 2015, the court denied the motion for a new trial. On November 23, 2015, Appellant filed an appeal from the October 26th order. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

A. Whether [A]ppellant filed timely post-sentencing motions, warranting a consideration of his appeal on the merits?

B. Whether the trial court abused its discretion in imposing the maximum penalty provided by law in that said sentence is manifestly excessive, only takes into consideration the serious nature of the crimes and the protection of the victim, fails to adequately take into consideration the rehabilitative needs of [A]ppellant, as well as his history and character, and exceeds the top of the aggravated range of the sentencing guidelines by double without stating sufficient reasons on the record?

C. Whether the evidence was insufficient to sustain the verdict of guilty as to all counts?

1. Whether the evidence was insufficient to sustain the verdict of simple assault where there was no evidence [A]ppellant intended to inflict bodily injury or attempted to inflict bodily injury or recklessly caused bodily injury by his actions of grabbing Kimberly Harvey Kelly [("Victim")] by the back of the neck and chin and flipping her to the ground and where all of her injuries were caused by the gravel on the ground?

2. Whether the evidence was insufficient to sustain the arson, reckless burning, criminal mischief and recklessly

endangering another person charges where there was no confession and no physical evidence linking [A]ppellant to the arson?

Appellant's Brief at 6-7.

As a prefatory matter, we consider whether the notice of appeal was timely filed.

Rule of Criminal Procedure 720 sets forth the procedure to be followed when a post-sentence motion is filed. Under this rule, the trial court must decide the post-sentence motion within 120 days of the filing of the motion. Pa.R.Crim.P. 720(B)(3)(a). The trial court may grant one 30-day extension for a maximum of 150 days. Pa.R.Crim.P. 720(B)(3)(b). If the trial court fails to decide the motion within this time period, it is deemed denied by operation of law. *Id.* Where a post-sentence motion is denied by operation of law, the clerk of courts is directed to enter an order on behalf of the court and "forthwith furnish a copy of the order . . . to . . . the defendant(s) and defense counsel. . . ." Pa.R.Crim.P. 720(B)(3)(d).

Ordinarily, the time for filing an appeal begins to run on the date the post-sentence motion is denied, either by the court or by operation of law. . . . [O]ur review of the record clearly shows that the clerk of courts did not enter an order reflecting that [the a]ppellant's post-sentence motion was denied by operation of law. This Court has previously held that, where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances. Therefore, we decline to quash the appeal . . . .

*Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003) (some citations omitted). Analogously, in the case *sub judice*, the clerk of courts did not enter an order indicating that Appellant's post-sentence motion was

- 4 -

denied by operation of law. Therefore, we will not find the appeal untimely.[10] *See id.*

Appellant challenges the discretionary aspects of his sentence. In his Pa.R.A.P. 2119(f) statement, he claims that

> when the trial court imposed the sentence, the court only considered two factors: the protection of the community and the protection of the victims. The trial court failed to consider the mitigating evidence presented by [A]ppellant, his history and characteristics, and his rehabilitative needs.
>
> \* \* \*
>
> Other than focusing on the serious nature of the offense and the protection of the victims, the trial court failed to state reasons on the record for imposing such a manifestly excessive sentence.

Appellant's Brief at 26, 28.

Appellant argues that the trial court abused its discretion in imposing the sentence, considering only the aforementioned two factors. *Id.* at 29. He avers that "a sentence at the top of the aggravated range of the guidelines would also address the nature of the charges and the protection of the victim." *Id.* at 32. He claims "the sentence was manifestly excessive because the trial court failed to put sufficient reasons on the record for exceeding the top of the aggravated range of the guidelines . . . ." *Id.* at 34.

This Court has stated,

---

[10] Given our resolution of the timeliness of the appeal, we need not address the first issue raised on appeal.

> discretionary aspects of [an appellant's] sentence [ ] are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test.
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (some citations omitted).

Instantly, Appellant timely filed his appeal, preserved the issue of an excessive sentence in his post-sentence motion for reconsideration of sentence, and included a statement in his brief which conforms with Pa.R.A.P. 2119(f). **See** Appellant's Brief at 26-28. Accordingly, we ascertain whether Appellant has raised a substantial question. **See Leatherby**, 116 A.3d at 83.

"We conduct a case-by-case analysis to determine what allegations constitute a substantial question." *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006) (citation omitted); **see also** 42 Pa.C.S. § 9781(b). "A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question." *Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa. Super. 2011);

***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa. Super. 2005) (concluding appellant raised a substantial question when he claimed that a sentencing court imposed an excessive sentence and failed to consider substantial mitigating factors). "[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." ***Commonwealth v. Bricker***, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted).

We find that Appellant's Rule 2119(f) statement presents a substantial question. ***See id.***; ***Kelly***, 33 A.3d at 640; ***Perry***, 883 A.2d at 602. Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

> More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

>> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

> 42 Pa.C.S.A. § 9721(b).

> Furthermore,

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Bricker*, 41 A.3d at 875-76 (alterations and some citations omitted).

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

*Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014) (quotation marks and citations omitted).

At the sentencing hearing, Appellant's counsel stated:

As a child, his parents divorced when he was very young. . . . He ended up with his mother, who was very physically and mentally abusive to him.

* * *

You can see from the information the Commonwealth has submitted that he has no convictions at 51 years old and for any violent crimes until this. He has no convictions from any of the other states he lived in for violent crimes. . . .

When he got here, he started having the mental health issues. He was diagnosed with PTSD as a result of his childhood, bipolar disorder, and severe depression. He was in and out of mental health facilities either as an inpatient or outpatient.

* * *

He attempted suicide two times, once by cutting his wrists and once by od'ing on pills.

* * *

When he got to the Bucks County Prison, they were treating him there for mental health problems. They gave him medication. Since basically his conviction on this, he has worked with the psychiatrist to wean him off the medication because they said it was mostly for having severe depression and they don't think at this point he is severely depressed.

N.T., 4/20/15, at 12-14. The trial court indicated that prior to sentencing, he read the Commonwealth's sentencing memorandum. *Id.* at 25. The Commonwealth's Pre-Trial Domestic Violence Investigation Report was attached to the Commonwealth's Sentencing Memorandum. *Id.* at 2; *see also* Commonwealth's Sentencing Mem., 2/23/15, at 1-9. Appellant initially

objected, but ultimately withdrew his objection, to the introduction of the report into evidence. N.T. at 8.

After a careful consideration of the record, we find no abuse of discretion. *See Bricker*, 41 A.3d at 875-76. The trial court considered the Domestic Violence Investigation Report. *See Antidormi*, 84 A.3d at 761. We find the trial court adequately addressed this issue and affirm on that basis. *See* Trial Ct. Op. at 11-14 (holding Appellant's history, character and rehabilitative needs were pivotal factors in sentencing; protection of the public, gravity of offense in relation to the impact on five victims and the community, and rehabilitative needs of Appellant justified the sentence imposed).

Next, Appellant argues the evidence was insufficient to sustain the verdict of guilty as to the charge of simple assault. He avers that Victim

> testified that [A]ppellant grabbed her by the back of her neck and her chin and flipped her to the ground. The injuries she sustained were a result of landing on gravel and dirt and were limited to scratches and bruises that did not require medical attention. Not the type of injuries that rise to the level of "substantial pain" or "physical impairment" that meet the definition of "bodily injury".

Appellant's Brief at 37.

Our review is governed by the following principles: "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not

- 10 -

require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

\* \* \*

When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt. . . .

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235-37 (Pa. 2007)

(citations and quotation marks omitted).

Simple assault is defined as follows:

**(a) Offense defined.**—Except as provided under Section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as "Impairment of physical

condition or substantial pain." 18 Pa.C.S. § 2301.

The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.

***Commonwealth v. Richardson***, 636 A.2d 1195, 1196 (Pa. Super. 1994)

(citation omitted). In ***Richardson***, this Court found the evidence sufficient

to support a conviction for simple assault where the defendant punched the

police officer in the face which caused the officer "to suffer a sore jaw for a couple of days but did not require him to go to a hospital or to miss work." *Id.*

At trial, Victim testified to the following.[11]  Appellant and Victim had an "on and off again" intimate relationship.  N.T., 2/5/15, at 45.   In September or October of 2013, Victim told Appellant she "wanted no more contact" with him.  *Id.*

> [The Commonwealth]:  Did there come a time when you realized that your requests to not have contact were going ignored?
>
> A: Yes.
>
> Q: And so what did you then do for help?
>
> A: It was just all about keeping him calm, but away from my children.
>
> Q: Well, at some point did you receive a voice mail that alarmed you?
>
> A: Yeah.
>
> Q: And can you tell us about that?
>
> A: When—when it was obvious that he wasn't going to get his way, he threatened me.
>
> Q: What did he say?
>
> A: He said he was going to kill me.
>
> Q: Did you keep that voice mail?

---

[11] *See* Trial Ct. Op. at 2-3.

A: Yeah.

*Id.* at 49-50. The voice mail recording was played in open court. *Id.* at 51.

Victim testified regarding the incident at the Penn Warner Club campsite.[12] *Id.* at 59. Appellant was outside of the camper and she was trying to calm him down but was unsuccessful. *Id.* at 65. Appellant "forcibly kissed" Victim and "it hurt." *Id.*

[The Commonwealth]: Did he say anything to you?

A: He said, you have a week to fix this.

Q: Fix what?

A: I guess me seeing Joe.

Q: And then what did he say after that?

A: I said, why? You know, like I am not understanding why he has to act like this and what he is thinking.

Q: And did he respond?

A: He said, you have a week to fix this or we are dead.

                        *    *    *

I said, why do I have to die? And he said, because we are soul mates, and that's when he grabbed for me.

Q: He grabbed for you. How did he grab for you?

A: He went for my neck.

Q: Okay. Can you show us using your hands how it happened?

---

[12] *See* Trial Ct. Op. at 3-4.

A: He goes for my neck like he is going to snap my neck. That's how he is going to, quote, unquote, kill me. And so he does this gesture where he grabs the back of my neck and my chin (demonstrating).

\* \* \*

One hand—whatever hand it is—is on my chin twisting me one way and the other hand twists me the opposite way.

Q: Of your head?

A: Yeah, to break my neck.

Q: And you had, unfortunately, been in this position before?

A: Yeah. Last time I had like nerve damage. It took four, almost five months for the pain to go away. I thought it was permanent, actually.

A: And so the last time, how did you react when you were in that position?

A: I fought it.

Q: And so this time what did you do?

A: I just went with it . . . .

Q: And so you were flipped. And where did you end up?

A: On my back on the road in the gravel.

\* \* \*

Q: Were you hurting after this?

A: Yeah. I mean, I landed on a bunch of gravel, big stone gravel and dirt. My arms and my back were bruised and scratched up.

N.T. at 66-69.

- 14 -

The trial court opined:

> In the instant case, [Appellant] applied force to a vital and vulnerable part of Victim's body. He used sufficient force to cause her to be thrown to the ground. Given . . . his threats to kill her, the jury could reasonably infer that [Appellant] intended to cause bodily injury and could find that he took a substantial step towards accomplishing that goal.

Trial Ct. Op. at 7.

Instantly, the record, viewed in the light most favorable to the Commonwealth, reveals that Appellant attempted to cause, or intentionally, knowingly or recklessly caused, bodily injury to Victim. *See* 18 Pa.C.S. § 2701(a)(1); 18 Pa.C.S. § 2301; *Richardson*, 636 A.2d at 1196. After careful consideration of the entire record, we hold the evidence believed by the jury was sufficient to sustain a simple assault conviction. *See Ratsamy*, 934 A.2d at 1235-36.

Lastly, Appellant contends the evidence was insufficient to sustain the arson, reckless burning, criminal mischief, and recklessly endangering another person charges where there was no confession and no physical evidence linking Appellant to the arson. Appellant's Brief at 40.

As a prefatory matter, we consider whether Appellant has waived this issue. In *Commonwealth v. Williams*, 959 A.2d 1252 (Pa. Super. 2008), the appellant raised the following issue in the Rule 1925(b) statement and brief: "There was insufficient evidence to sustain the charges of Murder,

Robbery, VUFA no license, and VUFA on the streets. Thus [Appellant] was denied due process of law." *Id*. at 1256. This Court found the issue waived.

> **If [an a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. The instant 1925(b) statement simply does not specify the allegedly unproven elements. Therefore, the sufficiency issue is waived.**
>
> Before leaving this issue, we note that the Commonwealth failed to object to the aforementioned defect in the 1925(b) statement. We also see that the trial court's opinion addressed the topic of sufficiency. The Commonwealth's failure and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P.1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion.

*Id.* at 1257 (some citations omitted).

Appellant raised the following issues in his Rule 1925(b) statement: "Whether the evidence was insufficient to sustain the arson, reckless burning, criminal mischief, and recklessly endangering another person charges where there was no confession and no physical evidence linking [A]ppellant to the arson." Statement of Matters Complained of on Appeal, 12/11/15, at 2 (unpaginated).

Appellant did not "specify the element or elements upon which the evidence was insufficient." *See Williams*, 959 A.2d at 1257. The fact that

the Commonwealth did not object to the defect and that the trial court addressed the issue is of no moment. *See id.* Therefore, we find the issue waived. *See id.*

Additionally, Appellant cites no legal authority in support of this insufficiency claim. It is well established that the

> failure to properly develop [a] claim and to set forth applicable case law to advance it renders [the] issue also waived. *See Commonwealth v. Hunzer*, 868 A.2d 498, 516 (Pa. Super. 2005) (holding that an appellant waived a claim where he failed to cite any legal authority in support of an argument in his appellate brief); *Commonwealth v. Ellis*, 700 A.2d 948, 957 (Pa. Super. 1997) (holding waiver results if an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief).

*Id.* at 1258. Therefore, even assuming *arguendo* that the issue was not waived based upon the deficient Rule 1925(b) statement, it is waived for failure to develop the claim with citation to legal authority. *See id.* Accordingly, we affirm the judgment of sentence and order the trial court to correct the record to reflect a two-and-a-half to five-year sentence for stalking.

Judgment of sentence affirmed.


Judge Panella Joins the Memorandum.

Judge Bowes Concurs in the Result.

J-S71044-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | | |
|---|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. | CP-09-CR-0006068-2014 |
| v. | : | | [3513 EDA 2015] |
| PATRICK SCOTT MONGEAU | : | | |

## OPINION

On February 6, 2015, following a trial by jury, the Defendant was convicted of Arson Endangering Inhabited Property, specifically the residence of Kimberly Harvie-Kelly and her four children, M.C.,[1] M.G., E.K. and W.K., in violation of 18 Pa.C.S. § 3301(c)(2), Reckless Burning Endangering Personal Property, specifically a motorcycle owned by Ms. Harvie-Kelly, in violation of 18 Pa.C.S. §3301(d)(2), Criminal Mischief, in violation of 18 Pa.C.S. § 3304(a)(1), Stalking of Ms. Harvie-Kelly in violation of 18 Pa.C.S. § 2709.1(a)(1), Simple Assault of Ms. Harvie-Kelly in violation of 18 Pa.C.S. § 2701(a)(1), Harassment of Ms. Harvie-Kelly in violation of 18 Pa.C.S. § 2709(a)(1), Recklessly Endangering M.C., Recklessly Endangering M.G., Recklessly Endangering E.K. and Recklessly Endangering W.K in violation of 18 Pa.C.S. § 2705. On April 20, 2015, the Defendant was sentenced to consecutive terms of incarceration of five to ten years for the crime of Arson, three-and-a-half to seven years for the crime of Reckless Burning, two-and-a-half to seven years for the crime of Stalking, one to two years for the crime of Simple Assault, and one to two years for each of the crimes of Recklessly Endangering Another Person for an aggregate sentence of sixteen to thirty-two years. The Defendant now appeals.

---

[1] Ms. Harvie-Kelly is the guardian of M.C. N.T. 2/4/15 pp. 28-29.

Kimberly Harvie-Kelly, age 51 at the time of trial, resided in a single family residence located at 85 Quaker Hill Road, in Middletown Township, Bucks County, with her four children, ages 17, 16, 13 and 9.[2] Ms. Harvie-Kelly knew the Defendant from middle school. In July of 2012, the Defendant contacted her through Facebook. One month later, the Defendant called her from a bus depot in Philadelphia and told her that he did not have transportation and that he had nowhere to stay. Ms. Harvie-Kelly drove to Philadelphia, brought him back to her home and allowed him to reside there. Subsequently, the two began a romantic relationship. The criminal offenses for which the Defendant was tried and convicted began to occur when Ms. Harvie-Kelly terminated that relationship.[3]

This case involves three distinct criminal episodes. The first criminal episode spanned a period of approximately eight months and formed the basis for the Defendant's Stalking conviction. Between September of 2013 and June of 2014, the Defendant engaged in a continuous course of conduct designed to place Ms. Harvie-Kelly in fear of bodily injury and/or to cause her substantial emotional distress. The Defendant randomly and repeatedly appeared at the Harvie-Kelly residence uninvited and unannounced despite being told by Ms. Harvie-Kelly, her oldest sons and police to stay away from their home and to refrain from contacting them.[4] On one such occasion, the Defendant climbed on to the roof of the home.[5] On another, he circled the home knocking on all of the windows.[6] When not appearing in person, the Defendant attempted to communicate with Ms. Harvie-Kelly through e-mail, text messaging and Facebook.[7] He subjected Ms. Harvie-Kelly to physical assaults, causing her to suffer nerve damage during

---

[2] N.T. 2/5/15 pp. 36-37.
[3] N.T. 2/5/15 pp. 39-45.
[4] N.T. 2/4/15 pp. 22-25, 32-33; N.T. 2/5/15 p. 46, 50-53.
[5] N.T. 2/5/15 p. 53.
[6] N.T. 2/5/15 p. 52.
[7] N.T. 2/5/15 pp. 46, 48-49.

2

one of those assaults.[8] Finally, he threatened to take her life. On January 28, 2014, the Defendant left Ms. Harvie-Kelly a voicemail message in which he told her, "You are dead. No one can stop me now. Goodbye you whore."[9] When he was contacted by the police about this death threat, the Defendant admitted that he had made comments that he "probably shouldn't have."[10] The Defendant's intrusions into the lives of this family caused such fear and occurred so often that the family initiated what they called the "lockdown procedure" at the first sign of the Defendant's potential presence. When the family was in "lockdown," the windows and doors of the residence were locked, no one was allowed in or out and everyone in the home kept a cellphone within reach.[11]

Ms. Harvie-Kelly soon realized that her attempts to keep the Defendant away from her and her children had failed. She also realized that police intervention was having a negative impact on the Defendant's behavior. She testified that the Defendant began to believe "he was untouchable" because, when the police were called to Ms. Harvie-Kelly's home, he was simply escorted off the property.[12] She was, therefore, forced to change tactics. Rather than trying to terminate the unwanted contact, she tried to minimize the Defendant's aggressive behavior by "keeping him calm."[13] That tactic also failed to curb the Defendant's violent, aggressive and controlling behavior.

The second criminal episode occurred on June 1, 2014 at Penn Warner Park, a lakeside campground located in Falls Township, Bucks County, and formed the basis for the Defendant's Simple Assault and Harassment convictions. On that date, the Defendant arrived at the Harvie-

---

[8] N.T. 2/5/15 p. 68.
[9] N.T. 2/5/15 p. 50; Exhibit C-5.
[10] N.T. 2/4/15 pp. 23-24.
[11] N.T. 2/4/15 pp. 35-36; N.T. 2/5/15 p. 52.
[12] N.T. 2/5/15 p. 54.
[13] N.T. 2/5/15 pp. 54-56.

Kelly residence shortly after midnight looking for Ms. Harvie-Kelly. Her oldest son, M.C., told the Defendant that Ms. Harvie-Kelly was not home but did not disclose that she and her boyfriend, Joseph Loomis, were staying at Penn Warner Park. M.C. heard the Defendant comment, "She is probably at the lake with her new boyfriend." M.C. immediately called Ms. Harvie-Kelly and her boyfriend to warn them the Defendant might be on his way. He also initiated "lockdown mode." M.C. stood watch until 3:00 a.m. to make sure the Defendant did not return.[14]

At approximately 1:00 a.m., the Defendant arrived at Penn Warner Park, located the trailer where Ms. Harvie-Kelly and Mr. Loomis were staying and began banging on their door and yelling.[15] Ms. Harvie-Kelly went outside to try to calm him down. As she was trying to speak with him, the Defendant grabbed her, forcibly kissed her on the mouth and told her, "You have a week to fix this or we are dead." Ms. Harvie-Kelly asked the Defendant why she had to die. He responded, "Because we are soul mates." The Defendant then grabbed Ms. Harvie-Kelly, one hand on the back of her neck, one hand on her chin, and twisted her head and neck. To avoid suffering serious injury, she did not resist the force being applied to her head and, as a result, was "flipped" to the ground.[16] Ms. Harvie-Kelly testified that the Defendant "goes for my neck like he is going to snap my neck. That's how he is going to ... kill me." Mr. Loomis heard Ms. Harvie-Kelly cry out and ran to assist her. The Defendant then fled the area.[17] Ms. Harvie-Kelly sustained painful scratches and bruises to her arms and back during this incident.[18]

The third criminal episode occurred that same date at the Harvie-Kelly residence and led to the Defendant's Arson, Reckless Burning and Criminal Mischief convictions. Between 3:00

---

[14] N.T. 2/4/15 pp. 28-40.
[15] N.T. 2/4/15 pp. 108-111; N.T. 2/5/15 pp. 60-63.
[16] N.T. 2/5/15 pp. 64-68.
[17] N.T. 2/4/15 p. 111; N.T. 2/5/15 p. 69.
[18] N.T. 2/4/15 p. 56, Exhibit C-1; N.T. 2/5/15 p. 69.

4

a.m. and 7:00 a.m., the Defendant returned to the Harvie-Kelly residence. He entered the shed on the property, retrieved a gas can and poured a trail of gasoline in the back yard, over a motorcycle parked beside the home and along the back wall of the residence. He ignited the gasoline with a match.[19] The fire, while burning, blocked anyone from exiting the home through the sliding glass doors located at the back of the residence.[20] M.C., M.G., E.K. and W.K. were asleep in the house when the Defendant started the fire.[21]

The Defendant asserts that this Court erred in admitting "a substantial amount of inadmissible hearsay statements of three witnesses."[22] In making this claim, the Defendant does not identify any of those witnesses and does not cite to any portion of the trial record. A concise statement of matters complained of on appeal must properly specify the error to be addressed on appeal. Commonwealth v. Hansley, 24 A.3d 410, 415 (Pa.Super.2011). A concise statement which is "too vague to allow the court to identify the issue raised on appeal is the functional equivalent to no concise statement at all." Commonwealth v. Dowling, 778 A.2d 683, 686-687 (Pa.Super.2001). Even if the trial court correctly guesses the issue the Defendant raised on appeal and writes an opinion pursuant to that supposition, the issue is still waived. Commonwealth v. Heggins, 809 A.2d 908, 911 (Pa.Super2002). Here, the Defendant has failed to identify, in any manner, the testimony he seeks to challenge on appeal. The Defendant's hearsay issues have therefore been waived.

The Defendant asserts that the evidence at his trial was insufficient to sustain the jury's verdicts.[23] The standard for reviewing a sufficiency claim is whether, viewing all the evidence and any reasonable inferences from such evidence, in the light most favorable to the

---

[19] Two burnt paper matches were found at the point of ignition. N.T. 2/5/15 pp. 109-111; Exhibit C-4.
[20] N.T. 2/5/15 pp. 95-116.
[21] N.T. 2/5/15 pp. 36-37.
[22] Statement of Matters Complained of on Appeal p. 2 ¶ 2.
[23] Statement of Matters Complained of on Appeal p. 2 ¶ 3.

Commonwealth, the finder of fact reasonably could have determined all the elements of the crime were established beyond a reasonable doubt. Commonwealth v. Hardy, 918 A.2d 766, 774 (Pa.Super.2007). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Commonwealth v. Montalvo, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008). In evaluating the sufficiency of the evidence, a court may not weigh the evidence and substitute its judgment for that of the jury. Commonwealth v. Gooding, 818 A.2d 546, 549 (Pa.Super.2003), appeal denied, 575 Pa. 691, 835 A.2d 709 (2003). Any question of doubt is for the finder of fact to resolve unless the evidence is so weak and inconclusive that no probability of fact could be drawn from the evidence. Commonwealth v. Hardy, 918 A.2d at 774. In determining the credibility of witnesses and the weight of the evidence produced, a jury is free to believe all, part or none of the evidence. Commonwealth v. Martin, 627 Pa. 623, 101 A.3d 706, 718 (2014).

With regard to his conviction for Simple Assault, the Defendant claims that there was no evidence that he attempted to inflict bodily injury or intentionally, knowingly or recklessly caused bodily injury to Kimberly Harvey-Kelly as required by Section 2701(a)(1).[24] "Bodily injury" is defined as impairment of physical condition or substantial pain. 18 Pa.C.S. § 2301. A person attempts to cause bodily injury if he has the intent to cause such injury and he does any act which constitutes a substantial step toward causing that injury. 18 Pa.C.S. § 901. A person intentionally causes bodily injury if it is his conscious object or purpose to cause such injury. A person knowingly causes bodily injury if he is aware that it is practically certain that his conduct will cause such injury. A person recklessly causes bodily injury when he consciously disregards a substantial and unjustifiable risk that such injury will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the

---

[24] Statement of Matters Complained of on Appeal p. 2 ¶ 3a.

circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe under the circumstances. 18 Pa.C.S. § 302(b).

In the instant case, the Defendant applied force to a vital and vulnerable part of Ms. Harvie-Kelly's body. He used sufficient force to cause her to be thrown to the ground. Given his history of violent and assaultive behavior toward Ms. Harvie-Kelly and his threats to kill her, the jury could reasonably infer that the Defendant intended to cause bodily injury and could find that he took a substantial step towards accomplishing that goal. The jury could also have reasonably found that the Defendant intentionally, knowingly or recklessly caused Ms. Harvie-Kelly to suffer bodily injury since she sustained bruises, scratches and experienced pain as a result of his actions.

In challenging his Simple Assault conviction, the Defendant relies on Commonwealth v. Wertelet, 696 A.2d 206, 210-211 (Pa.Super.1997) wherein the court held that evidence that the defendant kicked a state trooper in the shins with the back of her heel as she was flailing about and squirming while the trooper attempted to handcuff her, was insufficient to establish "bodily injury" for purposes of aggravated assault of a police officer. Id. at 210-211. In support of its holding, the court noted that the trooper did not report any bruising or swelling and characterized the injury as similar to "bumping your shin on a coffee table." Id. at 213. The facts of this case are clearly distinguishable both in terms of the degree of force used and the injury caused. In addition, unlike the defendant in Wertelet, the Defendant here applied substantial force to a vital and vulnerable part of the victim's body and discontinued his assault only after Ms. Harvie-Kelly's boyfriend appeared. Finally, in addition to having been charged with causing bodily injury, the Defendant in the instant case was also charged with attempting to cause bodily injury.

7

Evidence of the Defendant's violent words and actions and the injuries suffered by Ms. Harvie-Kelly was sufficient to support the jury's verdict under either theory.

The Defendant maintains that the evidence was insufficient to sustain his convictions for Arson Endangering Inhabited Property, Reckless Burning Endangering Personal Property, Criminal Mischief, Recklessly Endangering M.C., Recklessly Endangering M.G., Recklessly Endangering E.K. and Recklessly Endangering W.K, all of which related to the intentionally set fire at the residence of Kimberly Harvie-Kelly and her four children between 3:00 a.m. and 7:00 a.m. on June 1, 2015. The Defendant does not challenge the jury's findings that the fire was intentionally set, that an accelerant was used, that the fire placed the residence in danger of damage or destruction or that the fire placed or may have placed M.C., M.G., E.K. and W.K. in danger of death or serious bodily injury. He asserts that there was insufficient evidence for the jury to conclude that he was the individual who set the fire because "there was no confession and no physical evidence linking him to the arson."[25] As stated above, the Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Commonwealth v. Montalvo, supra. In the instant case, there was more than sufficient circumstantial evidence to establish that the Defendant was the person who started the fire at the victims' home. The Defendant had a long history of stalking and threatening Ms. Harvie-Kelly. Although he had previously and repeatedly been told been told not to be at the Harvie-Kelly residence by family members and police, the Defendant went to that residence in search of Ms. Harvie-Kelly just hours before the fire. He then tracked her to Penn Warner Park, where he physically assaulted her and threatened her life. After fleeing that scene, he did not return to his residence. While police and fire investigators were still on scene, the Defendant was observed bicycling by the fire crime scene. When police first attempted to speak with him,

---

[25] Statement of Matters Complained of on Appeal p. 2 ¶ 3b.

8

the Defendant fled on his bicycle.[26] After being taken into custody, the Defendant gave a false statement as to his whereabouts after leaving Penn Warner Park. Among his personal property, police founds two items of significance in the arson investigation. Investigators determined that paper matches were used to ignite the fire at the Harvie-Kelly residence. A matchbook was recovered from the Defendant's person.[27] Investigators also determined that gasoline was used to start the fire. Investigators detected the odor of gasoline on the Defendant's sneakers. The presence of gasoline on one of the sneakers was subsequently confirmed by laboratory analysis.[28]

With regard to the Defendant's Stalking conviction, the Defendant has waived his claim that the evidence was insufficient to support that conviction by failing to specify which element(s) the Commonwealth failed to prove beyond a reasonable doubt. Commonwealth v. Freeman, 128 A.3d 1231, 1248 (Pa.Super.2015) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient."). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa.Super.2009).

Finally, the Defendant challenges the discretionary aspects of sentence.[29] The applicable standard of review is whether this Court committed an abuse of discretion. Commonwealth v.

---

[26] N.T. 2/5/15 pp. 141-174.
[27] Exhibit C-16.
[28] N.T. 02/05/2015 pp. 17, 25; Exhibits C-12A to C-12B.
[29] Sentence was imposed on April 20, 2015. On April 30, 2015, the Defendant filed timely post-sentence motions to reconsider sentence and for a new trial. Following a hearing on July 14, 2015, this Court denied the post-sentence motion to reconsider sentence. The Defendant's remaining motions were denied by Order dated October 26, 2015. Confusion as to the timeliness of these motions arose because the Defendant's "Memorandum of Law In Support of Post-Sentence Motion – Motion for a New Trial" filed on August 10, 2015 was incorrectly docketed as a "Motion for a New Trial." The Clerk of Courts has since corrected the docket.

Walls, 592 Pa. 557, 926 A.2d 957 (2007). The court in Walls defined abuse of discretion as

follows:

> [A]n abuse of discretion is more than a mere error of judgment;
> thus, a sentencing court will not have abused its discretion unless
> "the record discloses that the judgment exercised was manifestly
> unreasonable, or the result of partiality, prejudice, bias or ill-will."
> Id. In more expansive terms, our Court recently offered: "An
> abuse of discretion may not be found merely because an appellate
> court might have reached a different conclusion, but requires a
> result of manifest unreasonableness, or partiality, prejudice, bias,
> or ill-will, or such lack of support so as to be clearly erroneous."
> Grady v. Frito-Lay, Inc., 576 Pa. 546, 839 A.2d 1038, 1046 (2003).
>
> The rationale behind such broad discretion and the concomitantly
> deferential standard of appellate review is that the sentencing court
> is "in the best position to determine the proper penalty for a
> particular offense based upon an evaluation of the individual
> circumstances before it." Commonwealth v. Ward, 524 Pa. 48,
> 568 A.2d 1242, 1243 (1990); see also Commonwealth v. Jones,
> 418 Pa.Super. 93, 613 A.2d 587, 591 (1992) (en banc) (offering
> that the sentencing court is in a superior position to "view the
> defendant's character, displays of remorse, defiance or indifference
> and the overall effect and nature of the crime."). Simply stated, the
> sentencing court sentences flesh-and-blood defendants and the
> nuances of sentencing decisions are difficult to gauge from the
> cold transcript used upon appellate review. Moreover, the
> sentencing court enjoys an institutional advantage to appellate
> review, bringing to its decisions an expertise, experience, and
> judgment that should not be lightly disturbed. Even with the advent
> of the sentencing guidelines, the power of sentencing is a function
> to be performed by the sentencing court. Ward, 568 A.2d at 1243.
> Thus, rather than cabin the exercise of a sentencing court's
> discretion, the guidelines merely inform the sentencing decision.

Id. at 961-962. (footnotes omitted)

As to the sentencing guidelines, the court in Walls reaffirmed that the guidelines "have

no binding effect, create no presumption in sentencing, and do not predominate over other

sentencing factors-they are advisory guideposts that are valuable, may provide an essential

starting point, and that must be respected and considered; they recommend, however, rather than

10

require a particular sentence." Id. at 964-965. Since the sentencing guidelines are merely advisory, "[i]f the court finds it appropriate to sentence outside the guidelines, of course it may do so as long as it places its reasons for the deviation on the record." Commonwealth v. Dutter, 617 A.2d 330, 333 (Pa.Super.1992) quoting Commonwealth v. Cornish, 589 A.2d 718, 721 (Pa.Super.1991).

The court in Walls also set forth the standards of review applicable to sentences which exceed the guidelines as follows:

> Thus, under the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

> * * *

> ...we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781 (d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).

Walls, 926 A.2d at 963-964. There is no requirement that a sentencing court's imposition of sentence be the minimum possible confinement. Id. at 965.

Prior to sentencing, the Commonwealth submitted a Pre-trial Domestic Violence Investigation Report for purposes of sentencing.[30] The report was admitted at sentencing without

---

[30] The Report is attached to the Commonwealth's Sentencing Memorandum filed on February 23, 2015.

objection.[31] The information contained in that report included summaries of each of the Defendant's police contacts. Several significant incidents were reported. In 1989, the Defendant was convicted in Massachusetts of Receiving Stolen Property after he was found attempting to sell property that had been taken in a residential burglary two weeks earlier. In 1993, the Defendant was convicted of a 1992 larceny in Massachusetts. In 1998, the Defendant's then girlfriend reported that the Defendant had been drinking heavily and using crack cocaine and that he had broken into a local doctor's office and removed property. The Defendant was convicted of receiving stolen property as a result of that incident. In September of 2012, Ms. Harvie-Kelly reported that the Defendant slashed all four of the tires on her car. In December of 2012, Ms. Harvie-Kelly reported that the Defendant threatened to slash her tires. In February of 2013, Ms. Harvie-Kelly reported a physical altercation with the Defendant after the Defendant started to damage her personal property. After this incident, he was told not to return to the residence by police, but disregarded those instructions and returned to the residence on two occasions two days later. On the second occasion, the Defendant had a knife and threatened to harm himself. In February of 2013, Ms. Harvie-Kelly reported that the Defendant cut his wrist. In May of 2013, Ms. Harvie-Kelly reported that she was assaulted by the Defendant, that her fifteen-year-old son was forced to intervene and that while the Defendant held her against the kitchen counter of her residence, the Defendant asked her son if he had a knife. In June of 2013, police were called to Brooke Glen Behavioral Hospital after the Defendant assaulted two other patients.

In the instant case, the Defendant asserts that this Court abused its discretion in imposing a sentence that exceeded the Sentencing Guidelines without stating sufficient reasons for doing so on the record. He asserts that in imposing sentence, this Court only considered the serious nature of the charges and the protection of the victims and failed to adequately consider the

---

[31] N.T. 4/20/15 pp. 2-8.

12

Defendant's rehabilitative needs, his history and his character.[32] In imposing sentences that exceeded the aggravated range of the applicable sentencing guidelines,[33] this Court explained in detail the reasons for doing so which included the number people the Defendant victimized, the fact that he chose to victimize children, the fact that he had held a position of trust with regard to those children, the number of and the distinct nature of the crimes he committed, the ongoing nature of his criminal conduct and the level of violence involved.[34]

The Defendant argued that his background and history, specifically his age, his lack of a violent criminal record, his history of mental health issues, an alleged history of being emotionally and physically abused, his two prior suicide attempts, medical issues concerning his back and the fact that his life was "in disarray" called for imposition of a lesser sentence.[35] This Court considered the factors submitted by the defense but did not find those facts and circumstances to be mitigating.[36] His lack of a violent criminal history was nullified by his lengthy history of violence towards himself and others. His emotional issues and the fact that his life was in disarray did not mitigate his ongoing domestic violence. Of particular importance was the fact that the Defendant chose to victimize the very people who were attempting to help him, who had given him a place to live, and who had offered him love and support. Ms. Harvie-Kelly's efforts to ameliorate the Defendant's situation in life had no positive effect upon the Defendant. Instead, it increased the Defendant's desire to control her life through increasingly violent behavior.

---

[32] Statement of Matters Complained of on Appeal p. 1 ¶ 1.
[33] The guidelines applicable in the Defendant's case were as follows:
    Arson: mitigated – RS; standard – 6-14 months; aggravated – 20 months
    Reckless Burning: mitigated – RS; standard – 1-12 months; aggravated – 15 months
    Stalking: mitigated –~; standard – RS-9 months; aggravated – 12 months
    Simple Assault: mitigated –~; standard – RS-9 months; aggravated – 12 months
    Recklessly Endangering Another Person: mitigated –~; standard – RS-6 months; aggravated – 9 months
[34] N.T. 4/20/15 pp. 25-35; N.T. 7/14/15 pp. 8-10.
[35] N.T. 4/20/15 pp. 11-16.
[36] N.T. 4/20/15 pp. 25-35; N.T. 7/14/15 pp. 8-10.

13

Contrary to the Defendant's assertion, the Defendant's history, character and rehabilitative needs were pivotal factors with regard to the sentence imposed. However, rather than mitigating the Defendant's sentence, the Defendant's history and character convinced this Court that he poses a real and continuing danger to the lives of Ms. Harvie-Kelly and her children. The palpable hatred and anger in his voice in his January 2014 voicemail death threat, his life threatening assaults on Ms. Harvie-Kelly and children, and his prior attempts to commit suicide convinced this Court that the Defendant's statement, "we're dead," was not an idle threat. The Defendant's background and his history left little doubt that the Defendant cannot or will not control his violent conduct and that, therefore, he will continue to pose a danger to the community in general, and Ms. Harvie-Kelly and her family in particular. In arriving at that conclusion, this Court noted the Defendant's complete disregard of the victims' attempts to protect themselves and the ineffectiveness of police intervention as a deterrent. This Court also noted that the Defendant continued to demonize Ms. Harvie-Kelly and her son, M.C., even as he was being sentenced. Based on all of these facts and circumstances, this Court concluded that the protection of the public, the gravity of the offense in relation to the impact on the Defendant's five victims and the community and the rehabilitative needs of the Defendant all called for the sentence imposed.

For all of the reasons set forth above, this Court finds that the claims set forth in the Defendant's Statement of Matters Complained of on Appeal lack merit.

BY THE COURT:

4-5-16
**Date**

**DIANE E. GIBBONS, J.**

14